*1206 OPINION.
Trammell:
Issues (d), (e), (f), (h), and (i) were abandoned by the petitioner at the hearing. Therefore, the action of the Commissioner in respect to those issues is approved. Issue (a) Avas settled as set forth in the findings of fact, by stipulation. The petitioner is, accordingly, allowed as a deduction for depreciation an *1207 amount of $10,811.28 in lieu of $7,851.06 allowed by the Commissioner. Issue (c) was also settled by stipulation. Therefore, the petitioner is entitled to a deduction of $4,087.65, representing the net loss sustained by the National Stamp Vending Co. instead of the amount of $1,886.30 as set forth in the Commissioner’s letter of August 29,1924.
There remain but two issues — (1) the amount to be included in invested capital with respect to the patents acquired in 1911, and (2) the deduction allowable on account of the exhaustion thereof.
In determining the amount of invested capital with respect to the patents, we must first decide whether they were acquired for stock or were acquired for something else, that is, the cancellation of an indebtedness. The petitioner treated the transaction on its books as amounting to the capitalization of the earned surplus to the extent of $147,913.71, and valued the patents and copyrights at $99,290.79. Roebuck was for all practical purposes the sole owner of the stock of the corporation. He had certain patents and applications which he desired to transfer to the corporation. The transaction took the form of a stock subscription for the additional stock, which represented not only consideration for the patents, but also the surplus of the corporation.
In his opening statement counsel for the petitioner stated that they were not able to determine the value of the patents, but had to measure it by the stock issued therefor. While the transaction took the form of a cancellation of indebtedness for stock, the substance of the transaction was that the stock was issued in part for patents and applications. It appears that the entire transaction was pursuant to a plan of Roebuck, the sole stockholder. On the other hand, if we look only to the form, we have no evidence as to the terms of the subscription agreement. We do not know whether there was a definite and fixed liability to pay for the stock in cash. We are convinced that it was the plan to issue stock to Roebuck for his patents or, in any event, to satisfy his subscription agreement by the transfer of the patents.
In view of our conclusion that the patents were acquired for stock, it is necessary to determine the value thereof at the time acquired. On this question we think the evidence is insufficient. The only facts we have before us consist of the book entries in which patents and copyrights were entered at $99,290.79 and the surplus account, together with the trial balance on June 30, 1911. We are unable to determine a valuation of the patents from this evidence.
On the question of the valuation of patents for purposes of depreciation, there is the same situation. The evidence presented is wholly insufficient. We must, therefore, affirm the action of the respondent on these issues.

Judgment will be entered under Rule 50.